Formatted for Electronic Distribution                                  Not for Publication

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

Filed & Entered
On Docket
03/10/2025

In re:

    **Judy A. Cheeseman,**                                 Case # 24-10107
    **Debtor.**                                                Chapter 13

*Appearances:*

| | |
|---|---|
| *Todd Taylor, Esq.* | *Andrea E. Celli* |
| *Law Offices of Todd Taylor, P.C.* | *7 Southwoods Blvd.* |
| *Burlington, Vermont* | *Albany, New York* |
| *For the Debtor* | *Chapter 13 Trustee* |

### MEMORANDUM OF DECISION

The following memorandum opinion addresses issues stemming from Debtor's motion requesting approval of the employment of Attorney Craig Jarvis to serve as special counsel in a personal injury case (the "Application"), and motion requesting approval of a settlement of that same case (the "Settlement Motion").[1] Attorney Jarvis began work as special counsel prior to the bankruptcy filing, thus the Application requests retroactive approval of his employment and fees to the Petition Date. For the reasons articulated below, the Court finds that the particular facts and circumstances of this case warrant such relief.

### JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157, 1334, and the Amended Order of Reference entered by the U.S. District Court on June 22, 2012. The

---

[1] Application of Debtor, Through Counsel, to Employ Craig Jarvis as Counsel to Handle Personal Injury Case Against James Martin, ECF 36; Motion to Approve Settlement and Compromise Pursuant to Bankruptcy Rule 9019, ECF 37.

1

Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A), this proceeding contains core matters, as it primarily involves proceedings concerning the administration of Debtor's estate, over which this Court has constitutional authority to enter a final judgment.

## FACTUAL BACKGROUND

The relevant underlying facts are not in dispute. Debtor commenced this case on June 3, 2024 (the "Petition Date")[2] and identified an agreement with Attorney Jarvis as an executory contract in her schedules.[3] However, the entry states the contract is for "Attorney for Auto Accident" with no additional details necessary for the contract to be assumed. Debtor's chapter 13 plan and corresponding confirmation order also list "Craig Jarvis Esq." under executory contracts, but again lack any substantive information about the contract or its terms.[4]

In late November / early December 2024, Debtor filed both the Application and the Settlement Motion.[5] Although neither the Application nor the Settlement Motion expressly state a request for retroactive relief, the documents make clear Attorney Jarvis was working on the case for months before the Application was filed – starting before Debtor filed for bankruptcy. According to the fee agreement attached to the Application, Debtor retained Attorney Jarvis in April 2024 and agreed to be paid on a contingency basis 33.33% of any recovery.[6]

With the Application and Settlement Motion, Debtor contemporaneously filed a third motion asking to shorten the notice period of the Settlement Motion (but not the Application) – stating vaguely that a looming statute of limitations caused a time pressure (the "Motion to

---

[2] Chapter 13 Voluntary Petition, ECF 1.

[3] Chapter 13 Voluntary Petition, Schedule G: Executory Contracts and Unexpired Leases, ECF 1.

[4] *See* Chapter 13 Plan, ECF 9; Findings and Order Confirming Chapter 13 Plan, ECF 27.

[5] Application of Debtor, Through Counsel, to Employ Craig Jarvis as Counsel to Handle Personal Injury Case Against James Martin, ECF 36; Motion to Approve Settlement and Compromise Pursuant to Bankruptcy Rule 9019, ECF 37.

[6] Application of Debtor, Through Counsel, to Employ Craig Jarvis as Counsel to Handle Personal Injury Case Against James Martin, Contingent Fee Agreement, ECF 36.

Shorten.").[7] On December 10, 2024, the Court conducted a hearing on the Motion to Shorten at which Debtor's counsel appeared. The Court discussed proper notice requirements and questioned the apparent retroactive nature of the Attorney Jarvis' employment.[8] As to whether the Application was requesting retroactive relief, Debtor's counsel clarified that it is, despite not expressly stating so in the Application. With respect to notice requirements, Debtor's counsel explained the statute of limitations in the personal injury case would expire in early 2025, prompting filing of the Motion to Shorten.[9] However, he failed to offer any reason why conventional notice was insufficient. Consequently, the Court denied the Motion to Shorten and directed Debtor's counsel to provide conventional notice to all parties (including Attorney Jarvis) for a hearing on both the Settlement Motion and Application.[10]

Hearing on the Settlement Motion and Application was subsequently noticed, scheduled, and held on January 7, 2025. During the hearing, the parties provided sufficient information to allow resolution of the Settlement Motion, but not the Application.[11] The Court found that Attorney Jarvis' employment was appropriate, but the question remained as to what extraordinary circumstances (if any) warrant retroactive approval.[12] Accordingly, the Court scheduled an evidentiary hearing on the Application. In the meantime, the Court approved the Settlement Motion and granted Attorney Jarvis limited authority to effectuate the terms of the settlement based

---

[7] Time Sensitive Motion to Shorten Notice for Motion to Approve Compromise and Settlement with James Martin / Progressive, ECF 41.

[8] *See* Audio Recording of Hearing Held on December 10, 2024, 11:19:00 – 11:20:20 a.m., 11:22:45 – 11:23:40 a.m.

[9] *Id*. at 11:20:30 – 11:21:15 a.m.

[10] *Id*. at 11:34:00 – 11:36:00 a.m.

[11] *See generally*, Audio Recording of Hearing Held on January 7, 2025, 11:26:00 a.m. – 01:00:00 p.m. (recess from 11:56:45 a.m. – 12:13:00 p.m.).

[12] *Id.*

3

upon any applicable statute of limitations and allow payment to Debtor's medical creditors.[13] Pending the evidentiary hearing and further determination, Attorney Jarvis' legal fees would be held in escrow.[14]

Prior to the evidentiary hearing, even though Attorney Jarvis lacked prior experience in bankruptcy court, upon learning that his employment had not been approved, he reviewed applicable law and filed a brief in support of his position.[15] On February 11, 2025, the Court held the evidentiary hearing on the Application at which all parties appeared and were heard. Attorney Jarvis argued that his compensation should be retroactively approved and detailed his work in the personal injury case – including providing estimated dates of events significant to the settlement.[16] He maintained that, considering the totality of circumstances, the settlement eventually reached was the best result possible for Debtor and allowed payment for medical services rendered.[17]

Next, the Court addressed Debtor's counsel. When asked why the Application was not timely filed, he stated the delay resulted from Debtor's uncertainty about how to proceed with her personal injury claim.[18] He explained that although Debtor originally hired Attorney Jarvis, she grew dissatisfied with his assistance, the settlement amount, and was seriously considering hiring different counsel.[19] When asked why Attorney Jarvis' contract was then listed in the schedules,

---

[13] Order Approving Settlement and Compromise Pursuant to Bankruptcy Rule 9019, as Modified, and Scheduling Further Hearing, ECF 53.

[14] *Id.*

[15] *See* Brief Filed by Craig A. Jarvis, Esq. Re: Debtor's Motion for Approval of Attorney Fee for Representation in a Personal Injury Matter Nunc Pro Tunc, ECF 55.

[16] *See* Audio Recording of Hearing Held on February 11, 2025, 02:04:40 – 02:11:55 p.m.

[17] *Id.* at 02:10:00 – 02:11:20 p.m. As approved by the Court, under the settlement terms Medicaid received payment for its liens based upon medical services provided.

[18] *Id.* at 02:13:15 – 02:13:45 p.m.

[19] *Id.*

4

Debtor's counsel explained that he was not aware of her concerns until after filing.[20] Further, once Debtor brought these concerns to his attention, he advised her that it would be difficult (and likely unwise) to switch attorneys so late in the process.[21] Nonetheless, he explored options with Debtor – speaking with her about the reasonableness of the settlement offer and factors which might be considered in a personal injury claim like hers.[22] This included preparing a list of questions for her to review with Attorney Jarvis to help put Debtor at ease.[23] After Debtor went over the questions with Attorney Jarvis, Debtor's counsel stated he found the answers satisfactory and Debtor was comfortable – therefore, he moved forward with the Application.[24]

Following testimony from all parties, the Court took the matter under advisement.[25]

## DISCUSSION

Sections 327(a) and 327(e) of the Bankruptcy Code[26] provide that a debtor may retain professionals only with court approval.[27] Bankruptcy courts exercise discretion in determining when approval of a professional is appropriate – taking into consideration the particular facts and circumstances surrounding each case so as to best serve the objectives of the bankruptcy system.[28]

---

[20] *Id.* at 02:16:30 – 02:18:10 p.m.

[21] *Id*. at 02:13:45 – 02:15:15 p.m.

[22] *Id.*

[23] *Id.*

[24] *Id.* at 02:15:05 – 02:15:30 p.m.

[25] While not relevant to the Court's inquiry in this instance, it is worth noting that after the Application was filed Debtor again changed her view and took the position that Attorney Jarvis should not get paid – not because his appointment ran afoul of bankruptcy rules but because she was overall unhappy with his work in her case. *See id.* at 02:19:30 – 02:25:20 p.m.

[26] Unless otherwise indicated, all references to the "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as thereafter amended, 11 U.S.C. 101, § et seq. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[27] 11 U.S.C. §§ 327(a), 327(e).

[28] *See* 3 Collier on Bankruptcy P 327.04 (citing *Bank Brussels Lambert v. Coan* (*In re AroChem Corp.*), 176 F.3d 610, 621 (2d Cir. 1999) and *In re Harold & Williams Dev. Co.*, 977 F.2d 906, 910 (4th Cir. 1992). *See also,* Fed. R. Bankr. P. 2014.

5

No service performed by professionals is compensable until the court approves such retention.[29] In the Second Circuit, there is a *per se* prohibition against compensating professionals for services rendered prior to a retention order.[30] However, under certain circumstances bankruptcy courts will grant retroactive or "nunc pro tunc" relief.[31]

As clarified on the record, the Application requests retroactive approval of Attorney Jarvis' employment and fees, meaning the Court must determine if such relief is warranted under the facts and circumstances of this particular case. If relief is warranted, the Court shall also determine the effective date of employment. Following a thorough review of the record and relevant case law, the Court finds that retroactive relief is appropriate, and approves Attorney Jarvis' employment retroactively to the petition date.

The leading case in this Circuit on the issue of retroactive appointment of professionals is *In re Keren Ltd. Partnership*.[32] In *Keren*, the Second Circuit held retroactive approval of a professional's employment

> should only be granted in narrow situations and requires that (i) if the application had been timely, the court would have authorized the appointment, and (ii) the delay in seeking court approval resulted from extraordinary circumstances.[33]

Further explanation for what constitutes "extraordinary circumstances" is given in the preceding district court opinion which *Keren* affirms.[34] Factors considered by bankruptcy courts

---

[29] *In re Robotics Resources R2, Inc.,* 117 B.R. 61, 62 (Bankr.D.Conn.1990); *In re Brown,* 40 B.R. 728, 730 (Bankr.D.Conn.1984).

[30] *See, e.g., Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.),* 655 F.2d 463, 469 (2d Cir.1981), *cert. denied,* 455 U.S. 941 (1982); *Smith v. Winthrop, Stimson, Putnam & Roberts (In re Sapphire Steamship Lines, Inc.),* 509 F.2d 1242, 1245–46 (2d Cir.1975); *In re 245 Assocs., LLC.,* 188 B.R. 743, 749 (Bankr.S.D.N.Y.1995).

[31] *See In re Jarvis*, 53 F.3d 416 (1st. Cir. 1995); *In re Arkansas Co.*, 798 F.2d 645 (3d Cir. 1986).

[32] *In re Keren Ltd. Partnership*, 189 F.3d 86 (2d Cir. 1999) (per curiam).

[33] *Id.* at 87.

[34] *See*, *In re Keren Ltd. P'ship*, 225 B.R. 303 (S.D.N.Y. 1998).

in making this determination are:

> whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors.[35]

This Court has applied the *Keren* standard in several cases, each time emphasizing the strictness of the extraordinary circumstances requirement.[36] The standard for a showing of extraordinary circumstances is high; it requires nuanced inquiries and careful weighing of the particular factors bearing on the timing of the application. "Simple neglect" on the part of a debtor in failing to take timely action does not constitute the extraordinary circumstances necessary to justify retroactive relief.[37]

In part because retroactive relief is so rarely granted, there are few examples of when extraordinary circumstances are found to exist. However, there is one published decision within the Second Circuit which applies *Keren* and concludes the standard is met – *In re Motors Liquidation*.[38]

While *Motors* is factually distinguishable from the case before the Court, there are relevant similarities. *Motors* is an asbestos case which involved retroactive approval of counsel for a

---

[35] *Id.* at 306-7 (quoting *In re F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 105–08 (3d Cir.1988) (citing *In re Arkansas*, 798 F.2d 645, 650 (3d Cir.1986)).

[36] *See, e.g.*, *In re Springfield Medical Care Systems, Inc.*, 2019 WL 6273385, *6 (Bankr. D. Vt. Nov. 22, 2019) (finding no extraordinary circumstances for delay caused by debtor in obtaining approval to employ financial advisor); *In re Plastic Techs. of Vt., Inc.*, Case # 13-10729 (Bankr. D. Vt. Feb. 3, 2014) (denying nunc pro tunc appointment where debtor failed to articulate extraordinary circumstances explaining delay); *In re Carpenter*, 392 B.R. 97, 105 (Bankr. D. Vt. 2008) ("Courts considering the second *Keren* factor have held that dilatory and neglectful conduct in making a nunc pro tunc application does not constitute extraordinary circumstances."); *In re Applied Biometrics Prods., Inc.*, Case # 02-10787 (Bankr. D. Vt. Mar. 6, 2003) (finding no extraordinary circumstances for delay caused by trustee in obtaining approval to employ special counsel).

[37] *In re Aquatic Dev. Group, Inc.*, 352 F.3d 671, 679 (2d Cir.2003) (quoting *Land v. First Nat'l Bank of Alamosa* (In re Land), 943 F.2d 1265, 1268 (10th Cir.1991)); *accord In re Carpenter*, 392 B.R. 97, 105 (Bankr. D. Vt. 2008).

[38] *In re Motors Liquidation Co.*, 438 B.R. 365 (Bankr. S.D.N.Y. 2010).

subcommittee of a creditors committee.[39] In *Motors*, the delay in seeking approval of counsel was a result of the indecision among creditors as to whether formation of a subcommittee or regular committee was the appropriate path forward under the circumstances.[40] Despite the disagreement, counsel began work due to the time sensitive nature of the work and because such work was needed regardless of which option was chosen.[41] *Motors* distinguishes this delay from a more typical request for retroactive approval where the professional is guilty of some type of neglect – the parties knew an application needed to be filed regardless, and consciously delayed requesting approval until a decision as to the type of committee was reached.[42]

Here, Debtor and her counsel experienced similar uncertainty on how to proceed. The delay in filing the Application was not due to inadvertence or neglect because Debtor's counsel knew Attorney Jarvis' employment needed to be approved by the Court. Furthermore, the delay was intentional but not a result of bad faith (which would not warrant retroactive approval). Instead, the delay was like *Motors* in that it allowed time to resolve a disagreement on how to move Debtor's personal injury claim forward. Only after Debtor's counsel reviewed the case and settlement with Debtor, did she feel comfortable moving forward. Once he determined Attorney Jarvis was handling the case appropriately and advised Debtor against seeking alternative counsel, he moved forward with filing the Application. The Court finds this explanation for delay to be analogous to that in *Motors* – and similarly concludes it is valid in the context of this case.

Finally, Attorney Jarvis' actions as the applicant also support a finding of extraordinary circumstances. Although Attorney Jarvis was unfamiliar with bankruptcy procedures, upon

---

[39] *See id.*

[40] *Id.* at 377-8.

[41] *Id.* at 369.

[42] *Id.* at 377-8.

learning his employment had not been approved, he took all steps necessary to cooperate fully with the Court. Attorney Jarvis responded promptly to all Court directives and performed necessary research to acquaint himself with applicable bankruptcy law. What is more, Attorney Jarvis demonstrated his competency to render professional services to Debtor and the bankruptcy estate – and his work ultimately resulted in a settlement allowing payment on behalf of Debtor's medical providers. Taking this into consideration, the Court finds it would be unjust to deny Attorney Jarvis compensation for his work due to the delay.

## CONCLUSION

For the reasons set forth above, the Court finds that the facts and circumstances of this case meet the *Keren* standard. The Court would have authorized Attorney Jarvis' employment had it been timely, and the delay in seeking approval was the result of extraordinary circumstances. The Court approves Attorney Jarvis' employment on a retroactive basis, effective as of the petition date, and his compensation is hereby granted pursuant to the terms of the contingency agreement.

This memorandum decision constitutes the Court's findings of fact and conclusions of law. A separate order will issue.

March 10, 2025  
Burlington, Vermont

*Heather Z. Cooper*  
Heather Z. Cooper  
United States Bankruptcy Judge

9